IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jervon Rodriguez Clark, #236671, | ) | |
| | ) | Civil Action No. 3:06-3243-RBH-JRM |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Stan Burtt, Warden, Lieber | ) | **REPORT AND RECOMMENDATION** |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Jervon Rodriguez Clark ("Clark"), is an inmate at the South Carolina Department of Corrections serving a sentence of life imprisonment, plus five years consecutive, for murder and possession of a weapon during a crime of violence. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on March 23, 2007. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on April 3, 2007, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on May 16, 2007.

## **Procedural History**

Clark shot and killed James Lee during a bar fight in Anderson, South Carolina on August 14, 1996. (App., 5). A jury with two alternates was selected on October 22, 1996. During voir dire of the jury panel, the trial judge inquired of the potential jurors whether they had been exposed to

any news coverage of the case.  None responded. (App., 7).  The Court advised the jurors in its

initial charge not to discuss the case or "read about it in the newspaper if there's any coverage."

(App., 38).  On the third day of trial, defense counsel alerted the Court that a local newspaper article

about the case stated that Clark had previously been charged with an earlier murder. (App., 300).

Television coverage of the trial was also ongoing.

The Court brought the jury in and inquired, "Have any of you read any news accounts of this

case or observed any other type news accounts or allowed anyone to talk to you about the case?"

(App. 315-16).  Three jurors responded.  The Court separately discussed with each of the three jurors

the nature and extent of their exposure to the news coverage.  Two jurors who had read newspaper

articles about the trial were excused for violating the court's initial instruction.  The third juror had

inadvertently seen a report on television.  She remembered seeing Clark's picture but nothing of

what was said about the case. (App. 324-25).  The Court ruled that this juror could remain on the

jury and denied defense counsel's motion for mistrial (insofar as one had been made). (App. 334-

35).

Trial counsel made no attempt to renew the motion for mistrial at the conclusion of

testimony.  An Anders brief was filed on direct appeal arguing that:

> The trial judge erred in refusing to advise defense counsel before the defense
> rested whether the jury would be instructed as to voluntary manslaughter.

The appeal was dismissed by order of the South Carolina Supreme Court filed November 17, 1998.

Clark's pro se "Amended Anderson Brief" was construed as a petition for rehearing and denied.

Clark then filed an application for post-conviction relief ("PCR").  One of the issues raised

was ineffective assistance of trial counsel for failing to renew the motion for mistrial at the end of

the case.   After a hearing at which Clark appeared and testified, the PCR court denied the

application. (App. 521).  With respect to this issue, the PCR court stated:

> At the hearing, the Applicant alleged the Counsel was ineffective for
> failing to renew a motion for mistrial.  A review of the transcript reveals that
> members of the jury panel, against the trial Court's instructions, were
> exposed to media reports of the trial, after the close of the State's case.  After
> the Court questioned the jurors, Counsel moved for a mistrial.  The motion
> was denied.  Counsel did not move fro [sic] a mistrial at the conclusion of the
> case.  Counsel testified that if he could do it over again, he would make the
> motion again at the conclusion of the trial.  However, the Applicant did not
> put up a case, and therefore nothing substantive occurred between Counsel's
> motion and the conclusion of the case.  As such, had Counsel made a motion
> for mistrial, at the conclusion of the case, the motion would have likely been
> denied.  Therefore, the Court finds that the Applicant was not prejudiced by
> the failure of Counsel to renew the motion for mistrial.

A petition for writ of certiorari was filed in the South Carolina Supreme Court raising this

issue:

> Was defense counsel ineffective for failing to renew his mistrial motion
> where three jurors were exposed to media coverage which stated petitioner
> had been tried for another murder on a prior occasion, since the judge
> removed two of the jurors, but allowed the third to remain, since the failure
> to renew the motion left the issue unpreserved for appeal, and the PCR court
> erred by reasoning a mistrial would not have been granted if counsel had
> timely argued it?

The petition was denied.

## Discussion

Clark now asserts that he is entitled to a writ of habeas corpus due to the failure of his trial

counsel to renew the motion for mistrial based on juror contamination by press reports.

Since Clark filed his petition after the effective date of the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as

amended.  Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert.*

*denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525

U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--(1) resulted in a decision that was
> contrary to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States; or (2)
> resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that contradicts
> the governing law set forth in [Supreme Court] cases .... A state- court
> decision will also be contrary to this Court's clearly established precedent if
> the state court confronts a set of facts that are materially indistinguishable
> from a decision of [the Supreme] Court and nevertheless arrives at a result
> different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the
> Supreme] Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the facts of
> the particular state prisoner's case. Second, a state-court decision also
> involves an unreasonable application of [the] Court's precedent if the state
> court either unreasonably extends a legal principle from [Supreme Court]
> precedent to a new context where it should not apply or unreasonably refuses
> to extend that principle to a new context where it should apply.

<u>Id</u>. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable."  <u>Id</u>. at 1521.

4

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an

5

unreasonable application of clearly established Federal law, as determined by the Supreme Court

of the United States."  28 U.S.C. § 2254(d)(1).  The court's analysis should center on whether the

state courts properly applied the Strickland test.  See Williams v. Taylor, 529 U.S. 362 (2000).

("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of

counsel claims.")

Clark argues that his attorney was ineffective for failing to renew the motion for mistrial, and

that this omission precluded him for raising the issue of the trial court's denial of the motion on

direct appeal.  Respondents concede that this issue was properly exhausted through the PCR process

and that the petition is timely.

Respondents first argue that counsel did not commit error because it was unnecessary to

renew the motion for mistrial to preserve the issue for appellate review.  However, the PCR court

did not specifically rule on the first prong of the Strickland test.  Instead, the PCR court ruled that

Clark had failed to establish prejudice because "had Counsel made a motion for mistrial at the

conclusion of the case, the motion would likely been denied." (App. 523).  Thus, the PCR court

implicitly ruled that Clark would have been unsuccessful on direct appeal.

Under South Carolina law "(d)ecisions regarding...whether to grant or deny a mistrial are

within the discretion of the trial court and will not be reversed on appeal absent an abuse of

discretion.  An abuse of discretion occurs when the conclusions of the trial court either lack

evidentiary support or are controlled by an error of law." State v. Sweet, 374 S.C. 1, 647 S.E.2d 202,

204-205 (S.Ct. 2007) (citations omitted).  When considering juror contamination by news accounts

during trial South Carolina courts hold:

> In evaluating news articles appearing during trial, the trial court must
> determine if they are prejudiced and whether jurors read the articles.  If such
> prejudicial exposure has occurred, the Court must craft an appropriate

curative measure.  In <u>Wasson</u>[1] our supreme court affirmed the denial of a mistrial where two jurors had read an article discussing the defendant's other pending charges....

<u>State v. Rogers</u>, 361 S.C. 178, 603 S.E.2d 910, 913-14 (Ct. App. 2004) (internal citations omitted).

The trial court in the present case followed this procedure.  The news reports were identified and the court individually questioned the jurors who had been exposed to the publicity.  The only one of the three who remained on the jury was not aware of any prejudicial information from the television report.  Appropriate curative charges were given to the jury.

Because Clark has not shown that he would have been successful on appeal had this issue been raised, he has not shown that trial counsel was ineffective.  The PCR court correctly applied the <u>Strickland</u> standard.  Therefore, it is recommended that respondent's motion for summary judgment be granted, and the petition be dismissed without an evidentiary hearing.

                                          Respectfully submitted,

                                          s/Joseph R. McCrorey
                                          United States Magistrate Judge
January 23, 2008
Columbia, South Carolina


**The parties' attention is directed to the important information on the attached notice.**

---

[1]<u>State v. Wasson</u>, 299 S.C. 508, 386 S.E.2d 255 (1989)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).